### Louis RODRIGUEZ and Nancy Rodriguez, Plaintiffs,

v.

### AMERICAN RESTAURANT VENTURES, INC. d/b/a Posa Posa Restaurant and Pizzeria and American Continental Properties, Inc., Defendants.

No. 94 Civ. 6938.

United States District Court, S.D. New York.

May 1, 1996.

cross-motion for summary judgment must be denied.

Ferraro, Zugibe & Albrecht (Arthur J. Ferraro, of counsel), Garnerville, New York, for plaintiffs.

Drake, Sommers, Loeb, Tarshis & Catania, P.C. (Steven I. Milligram, of counsel), Newburgh, New York, for Defendant American Restaurant Ventures, Inc. d/b/a Posa Posa Restaurant and Pizzeria.

Law Office of Gerald G. Cowen (George S. Bellantoni, of counsel), Elmsford, New York, for Defendant American Continental Properties, Inc.

WILLIAM C. CONNER, Senior District Judge:

On September 22, 1994, plaintiffs Louis and Nancy Rodriguez filed this action against defendants American Restaurant Ventures, Inc. d/b/a Posa Posa Restaurant and Pizzeria ("Posa Posa") and American Continental Properties, Inc. ("ACP"). Both defendants have moved for summary judgment. For the reasons set forth below, Posa Posa's motion is granted, and ACP's motion is denied.

## BACKGROUND

Defendant Posa Posa operates a restaurant located in Rockland Center Mall. On March 24, 1992, Louis and Nancy Rodriguez ate dinner at the restaurant. Afterwards, they left the restaurant and crossed a brick sidewalk, which runs along the front of the mall's stores, to two steps leading down to the mall's parking lot. The sidewalk is covered by an overhanging roof that is supported by square brick pillars. One of the brick pillars abuts one side of the steps. Louis Rodriguez slipped and fell on the top step, injuring his left leg.

Plaintiffs testified that as they were waiting for the ambulance to arrive, they noticed some water and a thin layer of ice on the top step. See Transcript of Deposition of Louis Rodriguez and Nancy Rodriguez, dated Sept. 22, 1995, at 43–45, 107–09, attached as Exhibit G to Affidavit of Steven I. Milligram, dated Nov. 7, 1995. Louis Rodriguez testified that the face of the pillar was wet. See id., at 46–47. Nancy Rodriguez stated that as she sat on the second step, she felt water drip onto her a few times, although she was not sure where it came from. See id., at 111–12. The weather was clear that evening; the most recent snowfall had ended at 9 a.m. the day before. Plaintiffs testified that the sidewalk and parking areas were clear of snow and ice, as was a different set of steps that they used on their way into the restaurant. See id., at 22–23, 32, 46, 94, 97, 99.

Rockland Center Mall is owned by Rockland Center Associates and operated by ACP. Posa Posa leases the restaurant's premises from Rockland Center Associates. The lease agreement provides that Rockland Center Associates "shall operate, manage, ... repair and maintain the Common Areas ..." and "shall have the right to prescribe reasonable rules and regulations for the use of the Common Areas...." Exhibit F, at § 4.01, attached to Milligram Aff. The common areas include walkways and sidewalks. See id., at § 4.04. The mall's rules and regulations provide that Posa Posa shall keep "[t]he outside areas immediately adjoining the premises ... clean and free from snow, ice, dirt and rubbish...." Exhibit E, at ¶ 7, attached to Affidavit of Arthur J. Ferraro, dated Dec. 18, 1995.

The testimony of Jim Jacob, an ACP employee who serves as the site manager at the mall, and of John Mandara, Posa Posa's manager, establishes that sanding, salting and shoveling the sidewalks, walkways and steps is the responsibility of Jacob, rather than of the storeowners. See Transcript of Deposition of James M. Jacob, dated Sept. 22, 1995, at 34–36, attached as Exhibit E to Milligram Aff.; Transcript of Deposition of John Mandara, dated Sept. 22, 1995, at 36, 38–39, attached as Exhibit D to Ferraro Aff. Mandara testified that if anyone noticed that the sidewalk and steps were icy, Posa Posa employees would sometimes throw kitchen salt on that area "until [Jacob] can come by and take care of it." Mandara Dep. at 36, 46–47, 61. Posa Posa employees never shoveled snow or sanded the sidewalk or steps. See id., at 36. On March 24, 1992, the steps had not been salted or sanded.

Plaintiff Louis Rodriguez has asserted claims for negligence against ACP and Posa Posa, and plaintiff Nancy Rodriguez has asserted claims for loss of consortium against both defendants. Posa Posa and ACP have asserted crossclaims against one another. Both defendants have moved for summary judgment dismissing the claims and crossclaims against them.

## DISCUSSION

Summary judgment should be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one that "might affect the outcome of the suit

under the governing law...." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). No genuine issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict for that party. *See id.*, at 248–49, 106 S.Ct. at 2510–11. In evaluating a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.*, at 255, 106 S.Ct. at 2513.

### I. Posa Posa's Motion

 Under New York law, an owner or tenant in possession of real property owes a duty of reasonable care to maintain the property in a safe condition. *See Abdul–Azim v. RDC Commercial Center, Inc.*, 210 A.D.2d 191, 620 N.Y.S.2d 70, 71 (1994); *McGill v. Caldors, Inc.*, 135 A.D.2d 1041, 522 N.Y.S.2d 976, 977 (1987). "[L]iability for a dangerous condition on property is predicated upon ownership, occupancy, control, or special use of the property." *Millman v. Citibank, N.A.*, 216 A.D.2d 278, 627 N.Y.S.2d 451, 452 (1995); *see also Abdul–Azim*, 620 N.Y.S.2d at 71 ("The determinative issue is one of possession and control." (citations omitted)). There is no doubt that Posa Posa did not own, occupy or make special use of the steps on which Louis Rodriguez fell. Plaintiffs assert, however, that a question of fact exists regarding whether Posa Posa exercised control over the steps. We disagree.

The lease agreement between Posa Posa and Rockland Center Associates clearly and unambiguously provides that responsibility for maintaining the common areas of the mall, including the steps, lies with the mall. *See* Exhibit F, at §§ 4.01, 4.04, attached to Milligram Aff. Given this circumstance and in the absence of other evidence that Posa Posa had possession or control of the steps,

Posa Posa may not be held liable for negligence. *See Millman*, 627 N.Y.S.2d at 452.

 Plaintiffs argue that the mall's rules and regulations indicate that Posa Posa shared responsibility for maintaining the steps. Those regulations, however, provide only that Posa Posa has some responsibility for cleaning the areas immediately adjoining the restaurant. *See* Exhibit E, at ¶ 7, attached to Ferraro Aff. The steps in question do not immediately adjoin the restaurant; instead, they are separated from the restaurant's premises by the brick sidewalk, which is approximately eight to ten feet wide. Despite plaintiffs' attempt to persuade us otherwise, we do not consider the term "immediately adjoining" to be ambiguous, and we conclude that the existence of this regulation does not raise a triable issue of fact regarding whether Posa Posa had control over the steps.

Plaintiffs also contend that because Posa Posa's employees occasionally threw kitchen salt on the sidewalk and steps when someone noticed ice in that area, it exercised control over the steps. We do not believe that this circumstance indicates that a question of fact exists on the issue of control. The uncontroverted testimony of both Jacob, ACP's site manager, and Mandara, Posa Posa's manager, establishes that Jacob was responsible for all maintenance in the common areas. Mandara stated, without contradiction, that any salting done by restaurant employees was a stopgap measure "until [Jacob] can come by and take care of it." *See* Mandara Dep. at 46. No reasonable jury could conclude, on the basis of this evidence, that Posa Posa exercised control over the steps.

In the absence of evidence that Posa Posa owned, occupied, controlled or made special use of the steps, it owed plaintiff Louis Rodriguez no duty of care with respect to maintaining the steps.[1] *See Millman*, 627 N.Y.S.2d at 452 (shopping center parking

---

**1.** The cases cited by plaintiffs may be easily distinguished. In each of those cases, the court found that the owner of the property could be liable to a person injured as a result of a dangerous condition on the property because the owner/lessor had retained possession or control over the property. *See Velsini v. Cadmus*, 152 F.R.D. 442, 446–47 (N.D.N.Y.1994) (lessor lived on

premises); *Edwards v. Getty Petroleum Corp.*, 172 A.D.2d 715, 569 N.Y.S.2d 104, 105 (1991) (under lease agreement, lessor retained right to enter premises and was responsible for making repairs); *Haner v. Vito*, 152 A.D.2d 896, 544 N.Y.S.2d 90, 91 (1989) (lessor admitted was responsible for repairs and maintenance).

lot); *Abdul–Azim*, 620 N.Y.S.2d at 71 (shopping center steps); *Rosato v. Foodtown*, 208 A.D.2d 705, 617 N.Y.S.2d 531, 531 (1994) (shopping center parking lot). Under these circumstances, Posa Posa is entitled to summary judgment dismissing Louis Rodriguez's negligence claim against it. Because Nancy Rodriguez's loss of consortium claim against Posa Posa is derivative of her husband's negligence claim, it must also be dismissed. *See Milam v. Herrlin*, 819 F.Supp. 295, 306–07 (S.D.N.Y.1993); *Maddox v. City of New York*, 108 A.D.2d 42, 487 N.Y.S.2d 354, 359, *aff'd*, 66 N.Y.2d 270, 496 N.Y.S.2d 726, 487 N.E.2d 553 (1985). Furthermore, because plaintiffs' claims against Posa Posa are dismissed, Posa Posa is also entitled to summary judgment dismissing ACP's crossclaims against it. *See Maddox*, 487 N.Y.S.2d at 359.

## II. ACP's Motion

■ In order to recover from defendant ACP, plaintiffs must demonstrate that: (1) ACP created the dangerous condition that caused Louis Rodriguez's accident or (2) ACP had actual or constructive notice of the condition and failed to correct the condition within a reasonable period of time.[2] *See DeVeau v. United States*, 833 F.Supp. 139, 143 (N.D.N.Y.1993); *Pirillo v. Longwood Assocs., Inc.*, 179 A.D.2d 744, 579 N.Y.S.2d 120, 121 (1992); *Trujillo v. Riverbay Corp.*, 153 A.D.2d 793, 545 N.Y.S.2d 2, 3 (1989). Plaintiffs do not assert that ACP had actual knowledge of the icy patch that caused Louis Rodriguez's fall. ACP contends that it is entitled to summary judgment because there is also no evidence that it created a dangerous condition or that it had constructive notice of the icy patch. We disagree.

■ Plaintiffs have presented evidence from which a reasonable jury could conclude that ACP created a dangerous condition that caused Louis Rodriguez's injury. Jacob testified that in 1982, ACP constructed the sidewalk, steps and overhang area. *See* Jacob Dep., at 47–48. Plaintiffs have introduced

the affidavit of an expert who has opined that ACP created a safety hazard by not providing a handrail for the steps. *See* Affidavit of Thomas R. Parisi, dated Dec. 15, 1995, at ¶¶ 4, 7. Plaintiffs' expert has also testified that the drains that ACP installed on the roof above the steps were not adequate for a roof area of that size and could become clogged by snow and ice. *See id.*, at ¶¶ 11, 13. He noted during his inspection that there was rusting and scaling on the eaves and in the area of an access panel in the overhang that was indicative of water infiltration. *See id.*, at ¶¶ 8, 10. He opined that because of inadequate drainage from the roof, water from the snow and ice that had accumulated on the roof during the recent snowstorms ran down the face of the pillar or dripped through the access panel and collected on the step where Louis Rodriguez fell. *See id.*, at ¶¶ 15–16. Plaintiffs also point to Louis Rodriguez's testimony that there was water on the face of the brick pillar next to the steps and to Nancy Rodriguez's testimony that she felt water drip onto her as she sat on the second step. Moreover, plaintiffs cite Jacob's testimony that although ACP is responsible for maintenance work on the roof, he cleaned out the drain openings and the area around them only if "somebody threw a ball up there ... or some garbage." *See* Jacob Dep, at 30–31. From this evidence, a reasonable jury could conclude that ACP created a dangerous condition by providing inadequate drainage from the roof and by failing to install a handrail on the steps.

ACP counters that Parisi's testimony is pure speculation and is therefore insufficient to demonstrate the existence of a triable issue of fact. In support of this argument, ACP introduces evidence that work was done on the roof area in November 1992, well before Parisi's inspections, that altered the drain openings. *See* Affidavit of Jim Jacob, dated Jan. 11, 1996, at ¶ 3. Plaintiffs contend that we should disregard this argument because in October 1995, plaintiffs requested from ACP information about any contractors

---

2. Where a plaintiff demonstrates that the defendant created the dangerous condition, the plaintiff need not establish that the defendant had notice, either actual or constructive, of the condition. *See Panagakos v. Greek Archdiocese of*

*North and South America*, 213 A.D.2d 336, 624 N.Y.S.2d 37, 37 (1995); *Keyes v. James A. Jennings Co.*, 150 A.D.2d 758, 542 N.Y.S.2d 209, 210 (1989).

that had maintained or treated the roof area. ACP responded that there were no such contractors. Parisi's final inspection of the roof took place after plaintiffs received that information. *See* Affidavit of Arthur J. Ferraro, dated Feb. 1, 1994, at ¶¶ 3–8. Therefore, until plaintiffs received ACP's reply papers on this motion, they had every reason to believe that there had been no repairs to the roof since the accident. Plaintiffs contend that we should not discount Parisi's testimony without permitting them to explore these eleventh-hour disclosures in discovery. We agree. Even if we put the best possible face on these events and assume that ACP's failure to turn over the records of the November 1992 repairs was inadvertent, granting summary judgment in ACP's favor before plaintiffs have had the opportunity to conduct discovery about the repairs would be premature. *See* Fed.R.Civ.P. 56(f).

A question of fact also exists regarding whether ACP had constructive notice of the icy condition on the steps. "To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Gordon v. American Museum of Natural History*, 67 N.Y.2d 836, 501 N.Y.S.2d 646, 647, 492 N.E.2d 774, 775 (1986); *Pirillo*, 579 N.Y.S.2d at 121. A general awareness of the existence of a dangerous condition is not sufficient to put defendant on constructive notice; instead, the defendant must have notice of the specific condition at issue. *See Gordon*, 501 N.Y.S.2d at 647, 492 N.E.2d at 775. Hence, ACP cannot be charged with constructive notice of the general inadequacy of the roof drains and the lack of a handrail. There must be evidence in the record from which a reasonable jury could conclude that ACP had constructive notice of the particular icy patch on which Louis Rodriguez fell.

First, at least for the purposes of this motion, ACP does not dispute that the icy patch was visible and apparent. Second, there is an issue of fact concerning how long the condition had existed before the accident. Plaintiffs have presented evidence as to the origin of the condition: Louis Rodriguez testified that he saw water dripping down the face of the pillar, and Nancy Rodriguez stated that she felt water drip onto her while she sat on the second step. This testimony is supported by the affidavit of plaintiffs' expert. Plaintiffs contend that in order for water to drip down from the roof, cover a substantial portion of the step and partially freeze, *see* Rodriguez Dep., at 106–09, it must have been collecting for some time. ACP contends that the thin layer of ice mixed with water indicates that the wet patch had just begun to freeze and therefore must have developed only shortly before the accident. Either of these inferences is reasonable under the circumstances. Therefore, the jury will have to determine whether the icy patch existed for a sufficient length of time before the accident so that ACP would have had the opportunity to discover and remedy the condition. *Compare Simmons v. Metropolitan Life Insur. Co.*, 84 N.Y.2d 972, 622 N.Y.S.2d 496, 497, 646 N.E.2d 798, 799 (1994) (finding no constructive notice where no evidence of origin or duration of patch of ice on which plaintiff slipped).

Because plaintiffs have demonstrated that triable issues of fact exist regarding whether ACP created a dangerous condition that caused Louis Rodriguez's accident or whether ACP had constructive notice of the icy patch on which Mr. Rodriguez slipped, ACP's motion for summary judgment is denied.

## CONCLUSION

For the reasons set forth above, defendant Posa Posa's motion for summary judgment dismissing the claims and crossclaims against it is granted. Defendant ACP's summary judgment motion is denied.

SO ORDERED.